# CASES

## ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF ARKANSAS,

### AT THE JULY TERM, A D. 1857.

————————

### BUTLER vs. REARDON ET AL.

It was not the duty of the Swamp Land Commissioners to audit and certifiy accounts for printing the advertisements for the sale of the swamp lands, required by the act of January 12, 1853, to be made by the Land Agents.

*Appeal from Pulaski Circuit Court.*

Hon. WILLIAM H. FEILD, Circuit Judge.

PIKE & CUMMINS and GALLAGHER, for the appellant.

The question as to the power and duty of the Board of Swamp Land Commissioners to audit and adjust the account presented and to give a certificate of its justice, before by law it could be paid at all, seems to us a very plain one.

1

The act of 1850, establishing the Board of Swamp Land Commissioners, conferred on the board full power and made it their duty, to audit, settle and pay all accounts for services or labor, in respect to the swamp lands. This board was an independent office in which was transacted, to the exclusion of all other offices, a certain branch of the public business. This was done by a special act, suspending, as far as it went, all general laws. See *Acts of* 1850, *p.* 77, *sec.* 3, 4. 5, 6, 7, 8, 10, 11: *p.* 136, *sec.* 3, 5.

The *Auditor* has no control, where a special law confers the power to settle accounts on others. *Ch.* 23, *sec* 9, *Rev. St.;* *Danley, Auditor vs. Whiteley,* 14 *Ark. R.* 687.

The Act of 1852, withdrew from the Board of Commissioners certain *specified* powers, which were transferred to another class of officers called Land Agents. This left all that mass of powers, originally conferred on the board, in their hands, not diminished or affected, unless necessarily withdrawn, among the specified powers, or unless the exercise of the specified powers by another agency would produce conflict and confusion. It is too clear for argument, that auditing accounts for services rendered in respect to the swamp lands was not one of the withdrawn powers; and the exercise of no withdrawn powers, is inconsistent with its remaining with the old board. *Acts of* 1852, *p.* 161, *sec.* 8, 27, 59.

Mr. Solicitor General HEMPSTEAD, for the appellee.

Mr. Chief Justice ENGLISH delivered the opinion of the Court.

This was an application by John Milton Butler, in January 1854, to the Pulaski Circuit Court, for a *mandamus* against Lambert J. Reardon, Joseph D. Dickson, and John McDaniel, as swamp land commissioners. The grounds upon which the writ was prayed, as stated in the application, are in substance as follows:

By a joint resolution of the two houses of the General Assembly, passed at the November session, 1852, the joint committee on

public printing were instructed to receive " proposals for the printing of the State, until the meeting of the next General Assembly," and to accept the lowest bid that might be offered, and take bond with ample security for the prompt and faithful performance of the work, subject to the approval of the General Assembly, (See Acts of 1852, page 327.)

Under this resolution Butler was the lowest bidder, and contracted with the committee, for printing in the *Arkansas Whig*, a newspaper published by him at Little Rock, at specified prices, the laws passed by that General Assembly, and the proclamations, notices and advertisements of the Governor, and other executive officers, during the recess of the General Assembly, until its next meeting. His proposal was dated on the 15th of November, and on the 2d of December, 1852, he executed a bond to the State for the faithful performance of his contract.

He avers that the committee reported the contract and bond to the General Assembly, and they were approved by it.

That in pursuance of the contract, he caused to be published in the *Arkansas Whig*, for six successive weeks, the advertisement and list of the swamp and overflowed lands in the Helena land district, as made out by Jesse A. Jackson, the State Land Agent for that district, for sale, in pursuance of law, etc.; the publication commencing on the 6th of Oct., and ending on the 10th of November, 1853.

That by the terms of the contract he was entitled to $530 40 for printing this advertisement, and on the 10th of January, 1854, he presented an account therefor to the board of swamp land commissioners, and requested them to allow and certify the same, in order that he might obtain payment thereof. But they refused to audit, and rejected the account, on the grounds that they had no jurisdiction of the matter, and that the same advertisement had been printed in other papers than the *Whig*, and paid for by the Stae.

The relator further states that the said Land Agent, in direct violation of the contract between the relator and the State, had caused the said advertisement, etc., to be published in two other

papers, and the accounts therefor of the proprietors of the pa-
pers had been audited, allowed and paid by the State, out of
the swamp land fund, the account of each amounting to $2,045
75.    But the relator submits that his rights were not affected
thereby, and that he was still legally entitled to be paid by the
State for the printing done by him under his contract.

Prayer for a *mandamus* upon the defendants named above, as
swamp land commissioners, to compel them to audit, allow and
certify the account of the relator for the printing aforesaid, in
order that he might obtain payment thereof, etc.

To an alternative writ, the defendants responded, admitting
that the relator had published the advertisement in his paper,
and presented an account therefor to the board of commis-
sioners as alleged, and that they refused to audit, allow and
certify the claim for the following reasons:

1st. That, by law, they, as such commissioners, had no juris-
diction of the matter.

2d. That the law required such advertisements to be pub-
lished in two newspapers of the State, and the selection of the
papers was under the control and discretion of the Land Agents,
and not of respondents.

3d and 5th. That Jackson, the Land Agent for the Helena
district, had selected two papers, and employed them to pub-
lish the advertisement in question, and they had commenced its
publication before the relator inserted it in the *Whig*.

4th. That the advertisement, so made in the two papers em-
ployed by Jackson, had been paid for by the State before the
service of the writ upon respondents in this case.

6th. That the relator had no authority from Jackson, as such
Land Agent, to print the advertisement in question in the *Ar-
kansas Whig*.

7th. The printing was not embraced in the terms of the al-
leged contract between the relator and the State, etc.

And for the above causes respondents submit that they should
not be compelled by mandamus to audit and allow said ac-
count, etc.

The relator interposed a general demurrer to the response, which was overruled by the Court, and he appealed.

Taking it for granted that the joint resolution, under which the appellant made his contract with the committee on public printing, was passed in a form to give it the force and effect of a law, and that his bond was approved by the General Assembly, and the contract thereby perfected, as alleged, without intending to express [any opinion on these points, we shall proceed to determine whether there was any law making it the duty of the appellees, as swamp land commissioners, to audit, and certify, if allowed, the account in question.

By act of 28th September, 1850, Congress granted to the State the swamp and overflowed public lands within her limits, charged with the trust of appropriating the proceeds thereof, as far as necessary, to their reclamation, by means of levees, drains, etc.

The General Assembly, by act of January 6th, 1851, constituted a board of swamp land commissioners with authority to ascertain the lands so granted to the State, to fix the price thereof, and to locate, and superintend the construction of the levees, drains, etc. required to reclaim them. The board was also empowered to sell the lands at private sale, but no provision was made for offering them at public sale, or for any advertisement thereof. *Acts of* 1850, *p.* 77.

By act of January 12, 1853, passed subsequent to the date of appellant's contract, provision was made for a division of the State into five land districts, and the election of an agent for each district, for the sale and entry of the swamp lands, etc. It was made the duty of each of these agents to open a land office in his district, after being furnished with plats of the lands, etc., and to advertise the swamp and overflowed lands embraced therein for sale, at public auction, by posting up hand-bills, and by publishing such advertisement, containing a list of the lands, *in two newspapers of the State, etc.,* (*sec.* 8:) and such of the lands as were not sold at such public sale, were to be subject to entry in his office, etc. *Acts of* 1852, *p.* 161. *Hempstead vs. The Au-*

*ditor*, 16 *Ark. R.* 57. Thus, by this act, the power of selling these lands was withdrawn from the swamp land commissioners, and vested in the land agents. After the offices of the agents went into operation, the commissioners had nothing to do with the advertisement and sale of the lands. The business that remained for them was to carry forward the process of selecting and reclaiming the lands.

There is no express provision in any of the Acts, making it the duty of the commissioners to audit and certify accounts for printing, or other incidental expenses, contracted for by the *agents* in discharging the *duties of their offices*. If such was their duty, it is to be derived by implication from the 27*th section of the Act of January* 12*th*, 1853; which provides that the " board of swamp land commissioners at their regular meetings, etc., shall carefully examine, audit and adjust all accounts for *levee or other work* properly due from the swamp land fund, and give to the person or persons, to whom such account is due, a certified statement of the amount, and for what service the same is due; upon the presentation of which to the auditor, he shall issue a warrant on the Treasurer;" etc.

What were the words " or other work," etc., as used above, intended to embrace? Were they intended to include *all account*s payable out of the swamp land fund, or only such as were contracted in connection with the duties of the commissioners, and in reference to matters under their supervision?

The compensation of selecting agents, engineers, the costs of constructing levees, drains, ditches, etc., and other expenses incidental to the office of swamp land commissioner, were under the supervision of the board, within their knowledge and control, and it was proper to impose upon them the duty of auditing and certifying accounts for all such services.

But contracts for printing advertisements for the sale of the lands, were to be made by the Land Agents. They were to employ the printers, stipulate for prices, furnish the manuscripts, and see that the work was done. These were duties incident to their offices, and matters immediately under their supervision

and control, and about which the commissioners could have no knowledge, except they derived it through them.

We cannot infer, therefore, that the legislature intended to make it the duty of the commissioners to audit, and certify to the auditor, accounts for printing done at the instance and upon the procurement of the Land Agents, in connection with their duties; but that such accounts were intended to be certified by them.

There being no law imposing upon the commissioners the duty of auditing and certifying the accounts in question, they could not be compelled by mandamus to do so.

This disposes of the case before us, and we do not deem it necessary or proper to decide whether or not it was the duty of the Land Agent to give to the appellant the printing of the advertisement for the sale of the swamp lands, under his contract: nor to intimate what we may deem to have been the proper remedy of the appellant for what he alleges to have been a violation of the contract on the part of the State, or her officers.

The judgment of the Court below is affirmed.